DAVID PARRY, RESPONDENT, *v.* THE CITIZENS' WATER–WORKS COMPANY, APPELLANT.

*Riparian rights—right of an upper riparian owner, a water-works company, to divert the waters of a brook.*

In an action brought to restrain a water-works company, organized under chapter 737 of the Laws of 1873, from diverting the water of a brook which ran through the land of the plaintiff, by the construction of a reservoir above plaintiff's land, from which the water was to be carried in pipes to supply the owners or occupants of lands which did not abut upon the brook, the defendant claimed the right, as a riparian owner upon the brook, to divert therefrom the surplus water not then required by the plaintiff.

*Held*, that the right of the plaintiff to the water was not limited by the use to which he has thus far devoted the waters of the brook.

That while the defendant might lawfully use the water of the brook, to a reasonable extent, on its own land abutting upon the stream, for irrigation or domestic or even manufacturing purposes, it could not make use of its own land simply for the purpose of storing these waters and leading them away to the land of others who could not otherwise obtain them at all.

*Semble*, that the mere storage of water in a reservoir by means of a dam is not *per se* an unreasonable use of the water of a stream by an upper riparian owner; but a diversion of the water for the permanent establishment of a business, and to create a reasonable water supply for a "thickly-settled hamlet," is a violation of the rights of abutting owners upon the stream below the point at which such diversion takes place.

APPEAL by the defendant, the Citizens' Water-Works Company, from an order of the Supreme Court, entered in the office of the clerk of the county of Orange on August 16, 1890, enjoining

the defendant, the Citizens' Water-Works Company, from divert-
ing the waters of a certain stream of water running over and
through the lands of plaintiff, and known as the Buttermilk Falls
brook, from their natural course and channel through the pipes laid
by them from their dam, and from laying and connecting any other
pipes with their various dams for the purpose of diverting the waters
of said brook.

*Calvin Frost* and *C. E. Tracy*, for the appellant.

*A. H. F. Seeger*, for the respondent.

Pratt, J. :

This is an appeal by defendant from an order made at the Dutchess
Special Term, August 9, 1890, after a hearing on the merits, restrain-
ing defendant, during the pendency of the action, from using any of
the water of Buttermilk Falls brook, in the town of Highlands, in
Orange county, for the purpose of supplying water to the village
of Highland Falls, on the ground that such use would be a diversion.
The defendant is a water-works company organized under chapter
737 of the Laws of 1873.

Section 3 of that act provides that these companies shall have
power " to take and hold real estate for the purpose of their corpora-
tion, and may have, hold and occupy any of the waters of this State ;
provided, however, that nothing herein contained shall be deemed
to infringe upon any private right which shall not have been the
subject of an agreement and lease or purchase by said corpo-
ration," etc.

The defendant does not justify its taking of the water upon the
ground of any agreement, lease or purchase from the plaintiff, who
is a lower riparian owner on this brook. The plan of defendant's
works is to store the water of this brook in reservoirs above plaintiff's
land, and thence conduct it through its pipes to supply the owners
or occupants of lands which do not abut upon the brook, and to dis-
charge a part thereof into the brook below plaintiff's land, and a part
thereof is not to be returned to the brook at all. It is, therefore,
obvious that a part of the waters of the brook are to be diverted
from following in their natural course through plaintiff's property.
In the absence of any agreement, lease or purchase, defendant's

claim of right to such use of the water must rest solely on the ground that it does not "infringe upon any private right of the plaintiff;" and such we understand to be the defendants' contention, *i. e.*, that being a riparian owner upon this brook and its tributaries at points above plaintiff's lands, it has the right thus to divert some of its waters and run a part thereof wholly around, and the other part wholly away from, the plaintiff's land. The theory seems to be that it may do this with what it calls the surplus. But what is the surplus? Obviously it does not depend upon the present use to which plaintiff has devoted the water of this brook. *Non constat* his place may be rendered far more valuable than it is at present esteemed, by uses of these waters to their utmost capacity; certainly no man has the right to deprive him of these advantages by diverting them or any material part thereof from his premises.

It should be noted, in the first place, that defendant does not propose to utilize the water thus taken upon any land of which it is a riparian owner. It proposes to make use of its own lands only for the purpose of storing these waters and leading them away to the lands of others, there to be sold to others who could not otherwise obtain them at all. Hence it cannot be said that the water thus diverted is to be used upon or for the benefit of defendant's land. Indeed, it may well be doubted if defendant would have any power to make use of the water, even on its own lands, except for fairly incidental purposes.

This view of the case, as it seems to us, fully justified the learned judge at Special Term in holding that the proposed use of the water was a diversion within the legal meaning of that term as applied to riparian rights. We think this view fully sustained by the reasoning of DANFORTH, J., in *Garwood* v. *New York Central and Hudson River Railroad Company* (83 N. Y., 405, 406).

The defendant, if a natural person, might use the water of this stream to a reasonable extent on its own land abutting upon the stream, for irrigation, or domestic, or even manufacturing, purposes. And the fact that some of it was thus permanently lost to the stream would not be regarded as a diversion, provided it was not material to the lower riparian owner. But how can such diversion be held immaterial in this case, where it is plainly regarded by this company and the town authorities of this village as sufficient for the perma-

nent establishment of a business, and a reasonable water supply for a "thickly settled hamlet." More than this, the waters of this stream in their natural flow seem to have been hitherto sufficient to carry away the drainage, which naturally settled into it from houses, stables, etc., when, as it now seems, the accumulations from this cause are becoming offensive. Again, the waters of the brook seem to have been hitherto sufficient to enable plaintiff to run a hydraulic ram by which he supplied his own premises with water from the brook; and defendant's affidavit indicates that the ram has ceased to force water by reason of insufficient supply. It is not to the purpose to say that the plaintiff's dam is insufficient. Such an appliance may be and often is made to work successfully by merely turning the nose of a supply pipe into a pool in a brook without any dam at all. Defendant certainly has no right to predicate any property in these waters upon the fact that plaintiff has built a dam to aid in operating his ram. It should be observed that the mere storage of water in reservoirs by means of dams is not, *per se*, an unreasonable use of the water of a stream by an upper riparian owner. Indeed, it would require a very strong case of such use of water to constitute diversion, even though there might be some temporary obstruction while the reservoir was being filled. The trouble here is not from that cause. It lies rather in the tendency of the defendant's use of the waters of this stream, which have been already felt by plaintiff. Hence, since the use of the water by the defendant is not within the limitations of its riparian proprietor's right, it follows that that use is a wrong. It is a wrong which has already resulted in inconvenience and some injury to plaintiff. The success of defendant's business scheme will inevitably increase that injury. Its extent is something which we cannot foresee. The chief trouble is that it cannot be measured with accuracy either by hindsight or foresight. It will be a continuing injury; hence a multiplicity of suits will result before redress can be given.

It is, therefore, plain upon the points submitted that plaintiff's bill was properly filed for preventive relief, and hence that the injunction was justified, at least until the court, by means of a trial, could more carefully inquire into the extent of the injury, and either permanently restrain the diversion or prescribe some conditions which will protect plaintiff against future injury.

The order appealed from should, therefore, be affirmed, with costs and disbursements of this appeal to the plaintiff.

DYKMAN, J., concurred; BARNARD, P. J., not sitting.

Order granting injunction affirmed, with costs and disbursements.